**COMP**
LAGOMARSINO LAW
ANDRE M. LAGOMARSINO, ESQ.
Nevada Bar No. 6711
DAVEN P. CAMERON, ESQ.
Nevada Bar No. 14179
3005 W. Horizon Ridge Pkwy., Suite 241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
aml@lagomarsinolaw.com
daven@lagomarsinolaw.com
*Attorneys for Plaintiff Tom Koch*

CLAGGETT & SYKES LAW FIRM
SEAN K. CLAGGETT, ESQ.
Nevada Bar No. 8407
JOSEPH N. MOTT, ESQ.
Nevada Bar No. 12455
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
Tel: (702) 655-2346
Fax: (702) 655-3763
sclaggett@claggettlaw.com
joey@claggettlaw.com
*Attorneys for Plaintiff Heather Schoenwald*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HEATHER SCHOENWALD, an individual; TOM KOCH, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>UNUM GROUP, a Foreign Corporation; COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, A SUBSIDIARY OF UNUM GROUP, a Foreign Corporation; SCOTT WEBB, an individual; DOES 1 through 10; ROE CORPORATIONS, 1 through 10,<br><br>Defendants. | CASE NO.:<br><br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

COME NOW, Plaintiff HEATHER SCHOENWALD ("SCHOENWALD") by and through her counsel of record CLAGGETT & SYKES LAW FIRM, and Plaintiff TOM KOCH ("KOCH") by and through his counsel of record LAGOMARSINO LAW, and hereby file this Complaint and Demand for Jury Trial against Defendants UNUM GROUP ("UNUM"),

COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, A SUBSIDIARY OF UNUM GROUP ("COLONIAL LIFE"), and SCOTT WEBB ("WEBB") and allege as follows:

## PARTIES

1.    SCHOENWALD is an individual who resided, at all times relevant herein, in Clark County, Nevada.

2.    KOCH is an individual who resided, at all times relevant herein, in Clark County, Nevada.

3.    UNUM is a Foreign Corporation doing business in Nevada and headquartered in Tennessee.

4.    COLONIAL LIFE is a Foreign Corporation doing business in Nevada and headquartered in South Carolina.

5.    WEBB is an individual who at all times resided in Arizona.

6.    Defendants designated herein as Does and Roe Entities are individuals and legal entities that are liable to Plaintiffs for the claims set forth herein. In addition to possible alter egos of the above-named Defendants, if discovery should reveal other defendants, or any of their shareholders, members, partners, trusts, affiliated entities, family members, significant others or ex-spouses are participating in fraudulent transfers for the purpose of avoiding creditors such as Plaintiffs, then such defendants shall be added as defendants to this underlying action.  Any transactions and the true capacities of Does and Roe Entities are presently unknown to Plaintiffs, and therefore, Plaintiffs sue such defendants by fictitious names. Plaintiffs will amend this complaint to assert the true names and capacities of such Doe and Roe Entities when more information has been ascertained.

## JURISDICTION

7.    This action is brought to remedy violations of the Plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, etc., Nevada Revised Statutes ("NRS") § 613 *et seq.*, and the common law.  This Court has jurisdiction under Title VII and supplemental jurisdiction over the claims arising under Nevada law pursuant to 28 U.S.C. § 1367 and the principles of pendent jurisdiction.

8.     Jurisdiction and venue are proper under 18 U.S.C. § 1965 and 28 U.S.C. § 1391 in the District of Nevada because Plaintiffs reside and/or resided in this District, Defendants conduct business in this District, and the unlawful conduct complained of herein occurred in this District.

9.     All procedural prerequisites for filing this suit have been met. Plaintiffs timely filed their respective Charges of Discrimination alleging acts of discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued SCHOENWALD her Right to Sue on August 17, 2020 and issued KOCH his Right to Sue on July 29, 2020. This Complaint and Jury Demand is being filed within ninety (90) days of Plaintiffs' receipt of the Notice of Right to Sue letters.

## GENERAL ALLEGATIONS

10.     UNUM is a holding company with numerous insurance company subsidiaries that specialize in providing and selling disability insurance, life insurance, and other employee benefit products.

11.     COLONIAL LIFE is a wholly owned subsidiary of UNUM.

12.     COLONIAL LIFE has offices all over the country including a Territory Sales Office in Las Vegas, Nevada.

13.     UNUM and COLONIAL LIFE are employers with over fifteen (15) employees.

14.     UNUM and COLONIAL LIFE were joint employers of SCHOENWALD and KOCH at all times relevant to the claims herein.

15.     SCHOENWALD was hired in January 2013 as a Territory Recruiter in the Las Vegas Office. She was given the position of Recruiting Consultant in April 2019.

16.     KOCH was hired in October 2018 as an Associate Territory Manager for the Las Vegas Office.

17.     WEBB was hired as a Territory Manager in February 2018. His Territory included the Las Vegas Office.

18.     SCHOENWALD reported to WEBB from September 2018 through November 2018. From November 2018 forward, after SCHOENWALD stopped reporting directly to

WEBB, she still interacted with him in meetings and at conferences because he was the Manager of her Territory, and WEBB still exercised management authority over SCHOENWALD.

19.     From November 2018 through April 2019, SCHOENWALD reported directly to KOCH. KOCH took the safety of his subordinates, including SCHOENWALD, very seriously.

20.     In or around March 2019, there was a training for Managers held in the Las Vegas Office. WEBB attended that training. During that training, WEBB insisted on sitting in and using SCHOENWALD'S office while SCHOENWALD was still in her office trying to work, instead of using a vacant office that was available.

21.     In or around April 2019, SCHOENWALD, KOCH, WEBB and other employees of COLONIAL LIFE attended a conference in Las Vegas.

22.     WEBB, who was already seated in the conference room prior to SCHOENWALD's arrival, conspicuously changed seats to intentionally sit next to SCHOENWALD at the conference.

23.     During that conference, WEBB repeatedly engaged in harassing and inappropriate conduct towards SCHOENWALD, including but not limited to the following:

        a.     WEBB wrote "I want to see Heather naked" on one of her business cards, showed it to her, then put it in his mouth and chewed it up before destroying it;

        b.     He wrote on post-it notes "You're so gorgeous" and showed them to SCHOENWALD;

        c.     WEBB wrote "I love you" in SCHOENWALD'S notebook; and,

        d.     WEBB inappropriately placed his hand on SCHOENWALD'S leg without her consent or permission, and despite her verbal and physical objections.

24.     None of the foregoing behavior from WEBB was welcome by SCHOENWALD, and she did not incite or entice WEBB to behave as he did.

25.     During and after the Conference, SCHOENWALD reported these incidents to KOCH, who was her direct supervisor at the time.

. . .

26.     After the April 2019 conference, SCHOENWALD and WEBB were supposed to take a work trip to El Paso, Texas.

27.     WEBB had his assistant schedule SCHOENWALD'S travel so that she would be alone with him during a car ride and at the hotel. KOCH agreed to attend the trip as well when SCHOENWALD expressed her discomfort traveling alone with WEBB.

28.     WEBB questioned why KOCH had to attend the trip and made efforts to prevent him from attending.

29.     When SCHOENWALD experienced an injury, the trip had to be canceled.

30.     WEBB rebooked the trip, but this time purposefully ensured that KOCH could not attend.

31.     On or about May 7, 2019 SCHOENWALD traveled to Phoenix and then drove to El Paso with WEBB and another executive.

32.     On or about May 9, 2019, SCHOENWALD was in a car alone with WEBB. WEBB began tearing up while telling SCHOENWALD personal details of his life, including details about his marriage and his lack of a sexual relationship with his wife.

33.     While in El Paso, WEBB offered to switch hotel room keys with SCHOENWALD under the pretense that SCHOENWALD could come talk to him at any time. SCHOENWALD refused.

34.     Sometime after WEBB and SCHOENWALD returned from El Paso, WEBB used his personal stationary to write an inappropriate letter to SCHOENWALD expressing his love for her in the form of song lyrics, which he sent to her.

35.     On or about May 13, 2019 SCHOENWALD, KOCH, and WEBB had to travel to Dallas, Texas for work.

36.     On or about May 13, 2019 there was a group dinner organized for all the COLONIAL LIFE employees on the trip.

37.     The group met in the lobby after dinner.

38.     WEBB was intoxicated and pointed to SCHOENWALD and said, "I don't like you. I'm not talking to you."

39.     On or about May 14, 2019, WEBB made dinner reservations for the group. KOCH was in Dallas, Texas at the time but did not attend the dinner.

40.     At some point in the evening, KOCH called SCHOENWALD'S cell phone. When WEBB saw that KOCH was calling, he said, "It's your boyfriend." SCHOENWALD and KOCH have never had a romantic relationship.

41.     After dinner, WEBB, SCHOENWALD, and KOCH were at a restaurant bar with co-workers.

42.     WEBB, who was visibly intoxicated, put his hands on SCHOENWALD'S legs.

43.     WEBB then grabbed SCHOENWALD on the head and forced her face into his, rubbing his nose on SCHOENWALD'S nose and called her "honey."

44.     SCHOENWALD immediately pulled away and objected. She told WEBB to stop and that she did not like or approve of what he was doing.

45.     KOCH was also present and witnessed WEBB'S actions. KOCH told WEBB to stop immediately and to not call her "honey" because it was inappropriate.

46.     Once back at the hotel, WEBB continuously called, texted, and emailed SCHOENWALD, trying to get her to speak to him.

47.     SCHOENWALD relayed WEBB'S actions to her co-worker, who was her roommate during the Dallas trip.

48.     SCHOENWALD spoke to KOCH after the trip to Dallas and expressed her frustration and disgust at WEBB'S harassment. KOCH asked SCHOENWALD if she wanted WEBB'S conduct to stop and if he had her permission to intervene. SCHOENWALD affirmatively stated that she was uncomfortable and wanted WEBB'S conduct to stop.

49.     After SCHOENWALD objected to WEBB'S advances in Dallas, he began ignoring her calls and emails, making it difficult for her to do her job.

50.     WEBB was in the Las Vegas office to perform manager reviews the week of May 27, 2019.

51.     KOCH took this opportunity to speak with WEBB regarding his behavior. In an attempt to keep his subordinates safe, KOCH instructed WEBB to cease all harassing behavior

towards SCHOENWALD.

52.     On or about May 31, 2019, SCHOENWALD was attempting to leave her office for the day when WEBB cornered her in her office, physically preventing her from leaving, and closed her office door.

53.     WEBB told SCHOENWALD that the reason that he had not been communicating with her since the Dallas trip was that he feared that she was going to complain about him to Human Resources.

54.     SCHOENWALD continuously told WEBB that she wanted to leave. Finally, he moved aside and let her leave her office.

55.     KOCH witnessed this event, and after it occurred, WEBB threatened KOCH and told him to convince SCHOENWALD to change her story and to not report WEBB to Human Resources.

56.     Following WEBB'S attack on both Plaintiffs, KOCH immediately called Human Resources to complain about WEBB'S actions towards SCHOENWALD to protect her from future and continued harassment.

57.     On or about June 2, 2019, after leaving three (3) separate voicemails with Human Resources, KOCH finally spoke to Human Resources Consultant Matthew McWilliams about WEBB'S conduct.

58.     On June 3, 2019 SCHOENWALD and KOCH submitted separate written complaints to Human Resources concerning WEBB'S conduct.

59.     After SCHOENWALD submitted her written complaint to Human Resources, WEBB began engaging in conduct designed to prevent SCHOENWALD from performing her job.

60.     Specifically, among other things, Webb:

- Excluded SCHOENFELD from recruiting meetings in which she needed to participate to do her job;

- Intentionally left SCHOENWALD off group texts that were necessary to her job;

- Ignored SCHOENWALD's work emails and calls; and,

- Removed SCHOENWALD from meetings that SCHOENWALD was scheduled to attend.

61.     WEBB'S actions made it impossible for SCHOENWALD to continue to do her job effectively.

62.     On or about June 17, 2019, SCHOENWALD was interrogated by Tiffany Harley, a member of the COLONIAL LIFE Human Resources team.

63.     SCHOENWALD was lied to in that she was not told about the interview but was instead led to believe that the team was having a meeting with Mike Keller to discuss recruiting, training, and development.

64.     SCHOENWALD was forced into a room alone with Ms. Harley. She was interrogated about issues that had nothing to do with her Complaint to Human Resources regarding WEBB.

65.     Instead of gathering facts about WEBB's inappropriate and unprofessional conduct, Ms. Harley pressed SCHOENWALD regarding gossip and false rumors related to SCHOENWALD.

66.     During the interrogation, Ms. Harley intimated that SCHOENWALD was at fault for the harassment and abuse she faced from WEBB because of her actions at other, unrelated events.

67.     During the interrogation, Ms. Harley did not ask any questions about the events that were the subject of SCHOENWALD'S Complaint to Human Resources.

68.     SCHOENWALD at one point asked to leave the room to get her notes and was told by Ms. Harley that she could not leave the room.

69.     SCHOENWALD was interrogated in the room alone for hours.

70.     Ms. Harley took SCHOENWALD'S work phone.

71.     There was no other third-party or witness in the room while Ms. Harley was interrogating SCHOENWALD.

. . .

. . .

72.     On or about June 17, 2019 KOCH was also placed in a separate room with Human Resources representative Mr. McWilliams under false pretenses and interrogated about issues having nothing to do with the complaint against WEBB.

73.     Mr. McWilliams took KOCH's cell phone prior to the interview.

74.     KOCH was interrogated about purported "inappropriate" behavior, including a group karaoke performance and being on the same phone call as a separate individual who made inappropriate sexual gestures.

75.     KOCH was also interrogated regarding SCHOENWALD's behavior. None of Mr. McWilliams' questions were related to the WEBB complaints.

76.     During the interrogation, Mr. McWilliams asked KOCH whether he had ever participated in "inappropriate" Facetime calls with SCHOENWALD. KOCH responded that he had not.

77.     Later, KOCH referenced a four-way Facetime call that took place in Dallas, Texas. KOCH, WEBB, and SCHOENWALD were involved in this call.

78.     Mr. McWilliams accused KOCH of providing false information and testifying that he had never participated in Facetime calls with SCHOENWALD.

79.     KOCH clarified that this was untrue. He had testified that he never participated in "inappropriate" Facetime calls with SCHOENWALD but never denied participating in Facetime calls in general.

80.     Upon information and belief, Ms. Harley, Mr. McWilliams, and WEBB have conspired with one another on prior occasions to retaliate against other employees with whom WEBB had issues.

81.     Upon information and belief, Ms. Harley and Mr. McWilliams assisted WEBB in getting certain employees terminated and manufacturing evidence against them.

82.     After the interrogation, KOCH was unlawfully terminated on June 25, 2019.

83.     After SCHOENWALD was interrogated, she was unlawfully terminated on June 28, 2019.

. . .

84.     Ms. Harley and Mr. McWilliams were required to follow UNUM policies and procedures while investigating SCHOENWALD'S and KOCH'S Complaints about WEBB.

85.     UNUM has an anti-retaliation policy that states the following: "Unum will not tolerate retaliation of any kind. If you raise a good faith concern or cooperate in the investigation of such a concern, you will not be at risk of losing your job or suffering any form of retribution as a result. Good faith does not mean that the employee has to be right; but, it does mean that the employee believes he/she is providing truthful and accurate information."

86.     In UNUM'S policies, retaliation is defined as follows: "Retaliation is any adverse action taken by an employer against an employee or former employee because they raised a good faith concern or cooperated in an investigation of such a concern. Adverse actions can include demotion, discipline, firing, salary reductions, or shift reassignment but retaliation can also be subtle. Therefore, sometimes it is hard to tell whether retaliation is occurring. It is important to understand that only changes that have an adverse effect on your employment are retaliatory."

87.     In UNUM'S policies, bullying is defined as follows: "Bullying or abusive behavior of any kind, whether on company property or off-site at a business function, is not allowed and will not be tolerated. Bullying and abusive behavior can include words, actions, or any behavior that creates an offensive, abusive, intimidating, or hostile workplace."

88.     WEBB'S conduct towards SCHOENWALD was egregious. As a result of his negligent, reckless, and/or intentional conduct, SCHOENWALD has suffered extreme emotional distress, depression, sadness, anxiety, and anger. SCHOENWALD was humiliated by WEBB'S actions and then further humiliated by the interrogation and lack of a credible investigation by Ms. Harley.

89.     UNUM'S and COLONIAL LIFE'S conduct towards SCHOENWALD was egregious. As a result of their negligent, reckless, and/or intentional conduct, SCHOENWALD has suffered extreme emotional distress, depression, sadness, anxiety, and anger. SCHOENWALD was humiliated by UNUM'S and COLONIAL LIFE'S actions and then further humiliated by the interrogation and lack of a credible investigation by Ms. Harley.

. . .

90.     UNUM'S and COLONIAL LIFE'S conduct towards KOCH was also egregious. As a result of their negligent, reckless, and/or intentional conduct, KOCH has suffered extreme emotional distress, depression, anxiety, and frustration. KOCH was humiliated by UNUM'S and COLONIAL LIFE'S interrogation and lack of a credible investigation by Mr. McWilliams. KOCH was further humiliated when he was unlawfully terminated in retaliation for reporting WEBB'S sexual harassment to Human Resources.

91.     SCHOENWALD was targeted by Ms. Harley and WEBB for termination in retaliation for her Complaint against WEBB.

92.     Ms. Harley, Mr. McWilliams, and WEBB had a pattern of conspiring to terminate employees who had issues with WEBB in violation of UNUM policies and procedures and applicable federal and state law.

93.     Ms. Harley was an employee of UNUM and COLONIAL LIFE when she took the actions complained of herein.

94.     Mr. McWilliams was an employee of UNUM and COLONIAL LIFE when he took the actions complained of herein.

95.     SCHOENWALD has suffered loss of income, benefits, and 401K contributions because of her unlawful termination.

96.     KOCH suffered loss of income, benefits, and 401K contributions because of his unlawful termination.

97.     WEBB'S conduct and physical touching of SCHOENWALD was unwelcomed, not consented to, and offensive to a reasonable person.

98.     UNUM'S, COLONIAL LIFE'S, and WEBB's conduct was severe and pervasive. It was of the kind that would shock the conscience of any reasonable person and was of the kind that is not acceptable in a civilized society.

99.     On or about March 23, 2020 SCHOENWALD submitted a Charge for sex discrimination and retaliation to the EEOC.

100.     On or about August 17, 2020 SCHOENWALD received a Notice of Right to Sue from the EEOC.

101.    On or about April 9, 2020, KOCH submitted a Charge for retaliation in violations of Title VII of the Civil Rights Act of 1964 to the EEOC.

102.    On or about July 29, 2020 KOCH received a Notice of Right to Sue from the EEOC.

103.    This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

104.    Plaintiffs have exhausted all their administrative remedies on all claims pled hereunder prior to filing this action with this Court.

### FIRST CAUSE OF ACTION

**Discrimination and Harassment Based on Sex in Violation of Title VII of the Civil Rights Act of 1964**

**(SCHOENWALD Against UNUM and COLLONIAL LIFE)**

105.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

106.    SCHOENWALD is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex.

107.    Defendants UNUM and COLONIAL LIFE, as employers, are subject to Title VII, 42 U.S.C. § 2000e, etc., as amended, and, thus, have a legal obligation to provide SCHOENWALD a fair, non-discriminatory work environment and employment opportunities.

108.    UNUM and COLONIAL LIFE refused to take reasonably adequate steps to prevent discrimination and harassment against SCHOENWALD by knowingly favoring employees not of SCHOENWALD'S protected class.

109.    UNUM and COLONIAL LIFE discriminated against SCHOENWALD when they failed to treat her the same way as similarly situated employees not of SCHOENWALD'S protected class.

110.    SCHOENWALD was subjected to physical and verbal harassment by WEBB on a pervasive and ongoing basis.

111.    No other similarly situated persons, not of SCHOENWALD'S protected class, were subject to the same or substantially similar conduct.

. . .

112.   SCHOENWALD suffered adverse economic impact due to UNUM'S and COLONIAL LIFE'S unlawful treatment of her, including her termination.

113.   SCHOENWALD was embarrassed, humiliated, angered, depressed, and discouraged by the discriminatory actions taken against her.

114.   SCHOENWALD suffered compensable emotional and physical harm, including but not limited to, sleeplessness, anxiety, depression, hopelessness, and helplessness resulting from this unlawful discrimination by UNUM and COLONIAL LIFE.

115.   SCHOENWALD is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

116.   Pursuant to the 1991 amendments to Tile VII, SCHOENWALD is entitled to recover punitive damages for UNUM'S and COLONIAL LIFE'S intentional repeated violations of federal and state civil rights laws.

117.   SCHOENWALD suffered damages in an amount to be determined by the Jury.

118.   SCHOENWALD is entitled to an award of reasonable attorney's fees.

119.   UNUM and COLONIAL LIFE are guilty of oppression, fraud, and/or malice, express or implied, as UNUM and COLONIAL LIFE knowingly and intentionally discriminated against SCHOENWALD because of her sex.

120.   Therefore, SCHOENWALD is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing UNUM and COLONIAL LIFE in an amount to be determined by a Jury.

## SECOND CAUSE OF ACTION

**Discrimination and Harassment Based on Sex in Violation of NRS 613.330(1)(a)**

**(SCHOENWALD Against Defendants UNUM and COLONIAL LIFE)**

121.   Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

122.   NRS 613.330(1)(a) makes it illegal for an employer to discriminate against any person with respect to the person's compensation, terms, conditions, or privileges of employment because of her sex.

. . .

123.   UNUM and COLONIAL LIFE refused to take reasonably adequate steps to prevent discrimination against SCHOENWALD by knowingly favoring employees not of SCHOENWALD'S protected class.

124.   UNUM and COLONIAL LIFE discriminated against SCHOENWALD when they failed to treat her the same way as similarly situated employees not of SCHOENWALD'S protected class.

125.   SCHOENWALD was subjected to physical and verbal harassment by WEBB on a pervasive and ongoing basis.

126.   No other similarly situated persons, not of SCHOENWALD'S protected class, were subject to the same or substantially similar conduct.

127.   SCHOENWALD suffered adverse economic impact due to UNUM'S and COLONIAL LIFE'S unlawful treatment of her, including her termination.

128.   SCHOENWALD was embarrassed, humiliated, angered, depressed, and discouraged by the discriminatory actions taken against her.

129.   SCHOENWALD suffered compensable emotional and physical harm, including but not limited to, sleeplessness, anxiety, depression, hopelessness, and helplessness resulting from this unlawful discrimination by UNUM and COLONIAL LIFE.

130.   SCHOENWALD is entitled to be fully compensated for her emotional disturbance caused by Defendants' discrimination.

131.   SCHOENWALD is entitled to recover punitive damages for UNUM'S and COLONIAL LIFE'S intentional repeated violations of NRS 613.330 et. seq.

132.   SCHOENWALD suffered damages in an amount to be determined by the Jury.

133.   SCHOENWALD is entitled to an award of reasonable attorney's fees.

134.   UNUM and COLONIAL LIFE are guilty of oppression, fraud, and/or malice, express or implied, as UNUM and COLONIAL LIFE knowingly and intentionally discriminated against SCHOENWALD because of her sex.

135.   Therefore, SCHOENWALD is entitled to recover damages for the same of example, to deter other employers from engaging in such conduct and by way of punishing

UNUM and COLONIAL LIFE in an amount to be determined by a Jury.

## THIRD CAUSE OF ACTION

### Retaliation in Violation of 42 U.S.C. § 2000e-3

### (SCHOENWALD Against Defendants UNUM and COLONIAL LIFE)

136.   Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

137.   In violation of 42 U.S.C. § 2000e-3 and NRS Chapter 613, Defendants retaliated against SCHOENWALD after she complained about acts that she reasonably believed were discriminatory.

138.   There may be more detrimental acts of which Plaintiffs are unaware which may also constitute retaliation..

139.   The actions and conduct by Defendants constitute illegal retaliation which is prohibited by federal law.

140.   SCHOENWALD suffered damages in an amount to be determined by a Jury.

141.   SCHOENWALD is entitled to an award of reasonable attorney's fees.

142.   Defendants are guilty of oppression, fraud, and/or malice, express or implied, because Defendants knowingly and intentionally retaliated against Plaintiffs because they complained of acts they considered discriminatory.

143.   Therefore, SCHOENWALD is entitled to recover damages for the sake of example, to deter employers from engaging in such conduct and by way of punishing Defendants in an amount to be determined by a Jury.

## FOURTH CAUSE OF ACTION

### Retaliation in Violation of 42 U.S.C. § 2000e-3

### (KOCH Against Defendants UNUM and COLONIAL LIFE)

144.   Plaintiffs repeat and reallege the foregoing allegations as though fully set forth herein.

145.   42 U.S.C. § 2000e-3 renders it illegal for employers to retaliate against employees who have opposed unlawful employment practices as outlined in Title VII.  Such opposition is deemed protected activity under Title VII.

146.    KOCH engaged in a protected activity under Title VII when he reported WEBB on May 30, 2019 and June 3, 2019 for sexually harassing and discriminating against SHOENWALD.

147.    KOCH had a reasonable and good faith belief that the behavior he witnessed and as described to him by SCHOENWALD constituted sexual harassment and discrimination and was an unlawful employment practice.

148.    Instead of investigating the KOCH'S complaints of sexual harassment against WEBB, Defendants investigated the reporter, KOCH, and created pretextual reasons for his unlawful termination on June 25, 2019.

149.    But for KOCH's complaint to Human Resources against WEBB, KOCH would not have been unlawfully terminated.

150.    A reasonable person would have found Defendants' actions to investigate, lie, and terminate KOCH materially adverse as it would dissuade a reasonable employee in KOCH'S circumstances from complaining about sexual harassment in the workplace.

151.    Defendants subjected KOCH to an adverse employment action by terminating him after he lodged a complaint against WEBB, which constitutes a protected activity.

152.    A causal link exists between KOCH'S protected activity and Defendants' adverse employment action as Defendants terminated KOCH for lodging a complaint of sexual harassment against WEBB.

153.    KOCH'S termination of employment would not have occurred but for his participation in a protected activity.

154.    Defendants willfully engaged in an unlawful employment practice under 42 U.S.C. § 2000e-3 by terminating KOCH in retaliation for his complaint against WEBB.

155.    Defendants are liable for the acts and omissions of its agents and employees.

156.    Defendants, either directly or indirectly or by and through their agents, retaliated against KOCH and caused him significant damages, injuries and losses by terminating his employment for engaging in a protected activity.

. . .

157.   Defendants' conduct was with malice or with reckless indifference to the federally protected rights of KOCH, within the meaning of Title VII.

158.   As a direct and proximate result of Defendants' conduct, by and through its employees, KOCH was harmed by Defendants' actions because KOCH is now suffering, and will continue to suffer, irreparable injury and monetary damages in the form of past, present, and future lost earnings and other benefits.

Defendants' conduct, by and through its employees, was illegal, willful, intentional, oppressive, malicious, and done with wanton and reckless disregard for KOCH's rights. As a direct and foreseeable result of Defendants' conduct, by and through its employees, KOCH has been required to retain the services of an attorney and is entitled to reasonable attorney fees and costs.

159.   KOCH is also entitled to recover punitive and compensatory damages as a direct and foreseeable result of the Defendants' conduct as described herein.

## FIFTH CAUSE OF ACTION

### Battery

### (SCHOENWALD Against WEBB)

160.   Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

161.   An actor is subject to liability to another for battery if he (a) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

162.   WEBB intentionally caused offensive contact with SCHOENWALD when he placed his hands on her legs and when he grabbed her head and brought her face into contact with his.

163.   Harmful and direct contact between SCHOENWALD and WEBB resulted from WEBB'S intentional conduct.

164.   WEBB'S intentional and harmful contact was the direct and proximate cause of injury to SCHOENWALD.

. . .

165.   UNUM and COLONIAL LIFE are vicariously liable for WEBB'S actions because those actions were not independent ventures, were committed during the very tasks assigned to WEBB by UNUM and COLONIAL LIFE and were reasonably foreseeable.

166.   SCHOENWALD has been forced to seek legal counsel to pursue her valid legal claims against WEBB and she is therefore entitled to reasonable attorney's fees.

167.   WEBB is guilty of oppression, fraud, and/or malice, express or implied, because WEBB knowingly and intentionally caused harmful and offensive contact to the person of SCHOENWALD.

168.   Therefore, SCHOENWALD is entitled to collect punitive damages from WEBB in an amount to be determined by a Jury.

### SIXTH CAUSE OF ACTION

**Assault**

**(SCHOENWALD Against WEBB)**

169.   Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

170.   An actor commits assault when he causes another to feel apprehension of harmful or offensive conduct.

171.   WEBB caused SCHOENWALD to feel apprehension of harmful or offensive conduct when he placed his hands on her legs and when he grabbed her head and brought her face into contact with his.

172.   WEBB'S conduct was the direct and proximate cause of injury to SCHOENWALD.

173.   UNUM and COLONIAL LIFE are vicariously liable for WEBB'S actions because those actions were not independent ventures, were committed during the very tasks assigned to WEBB by UNUM and COLONIAL LIFE and were reasonably foreseeable.

174.   SCHOENWALD has been forced to seek legal counsel to pursue her valid legal claims against WEBB and she is therefore entitled to reasonable attorney's fees.

175.   WEBB is guilty of oppression, fraud, and/or malice, express or implied, because WEBB knowingly and intentionally caused harmful and offensive contract to the person of

SCHOENWALD.

176.    Therefore, SCHOENWALD is entitled to collect punitive damages from WEBB in an amount to be determined by a Jury.

### SEVENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (SCHOENWALD Against Defendants)

177.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

178.    An actor commits intentional infliction of emotional distress when that actor's conduct was extreme or outrageous with either the intention of, or reckless disregard for, causing emotional distress to another, and that the victim suffered severe or extreme emotional distress as the actual and proximate result of the actor's conduct.

179.    Defendants' conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community.

180.    Defendants' actions towards Plaintiffs including, but not limited to, WEBB's touching SCHOENWALD inappropriately and without her consent, WEBB'S grabbing her face, WEBB'S propositioning her, WEBB'S harassing her, WEBB'S cornering her in her office with the intention of keeping her there, UNUM and COLONIAL LIFE'S unlawful termination of her, Ms. Harley's interrogation of her, Ms. Harley's questioning of SCHOENWALD of personal matters that had nothing to do with the Complaint SCHOENWALD filed, Ms. Harley's refusal to let SCHOENWALD leave the room during her interrogation, Ms. Harley's inferences that SCHOENWALD was at fault for WEBB'S conduct, UNUM and COLONIAL LIFE'S failure to intervene upon learning of WEBB'S ongoing harassment of SCHOENWALD,  and other acts constitute oppressive conduct that was extreme and outrageous with the intention of, or reckless disregard for, the emotional distress it caused SCHOENWALD.

181.    SCHOENWALD suffered severe emotional distress as a result of Defendants' actions. SCHOENWALD suffered from depression, anxiety, anger, feelings of helplessness, feelings of hopelessness, fear of losing her income, fear of not being able to support her children, constant fear of continued harassment and improper physical contact, and humiliation.

182.    Defendants' conduct was the direct and proximate cause of injury to SCHOENWALD.

183.    UNUM and COLONIAL LIFE are vicariously liable for WEBB'S actions because those actions were not independent ventures, were committed during the very tasks assigned to WEBB by UNUM and COLONIAL LIFE, and were reasonably foreseeable.

184.    SCHOENWALD has been forced to seek legal counsel to pursue her valid legal claims against Defendants and she is therefore entitled to reasonable attorney's fees.

185.    Defendants are guilty of oppression, fraud, and/or malice, express or implied, because Defendants knowingly and intentionally caused harmful and offensive contract to the person of SCHOENWALD with the intention of, or reckless disregard for, the damages that it was causing to SCHOENWALD.

186.    Therefore, SCHOENWALD is entitled to collect punitive damages from WEBB in an amount to be determined by a Jury.

## EIGHTH CAUSE OF ACTION

### Wrongful Termination

### (SCHOEWALD Against UNUM and COLONIAL LIFE)

187.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

188.    An employer commits tortious wrongful termination when the employer improperly dismisses an employee for reasons that violate public policy.

189.    Nevada has a strong public policy of encouraging employees to seek assistance from Human Resources by filing a Complaint when the employee is being subjected to harassing and improper conduct.

190.    SCHOENWALD complied with this public policy by filing a Complaint with Defendants' Human Resources department regarding WEBB'S conduct.

191.    UNUM and COLONIAL LIFE retaliated against SCHOENWALD for filing her Complaint by terminating her.

192.    UNUM and COLONIAL LIFE'S conduct violated the strong and compelling public policy of encouraging employees to be comfortable in addressing harassing or

discriminatory conduct by bringing it to the employer's attention.

193. Conduct similar to UNUM'S and COLONIAL LIFE'S will have a chilling effect on employees reporting their concerns in the future.

194. UNUM and COLONIAL LIFE's conduct also violated their internal policies against retaliation when an employee makes a good faith complaint.

195. Defendants' conduct was the direct and proximate cause of injury to SCHOENWALD.

196. SCHOENWALD has been forced to seek legal counsel to pursue her valid legal claims against Defendants and she is therefore entitled to reasonable attorney's fees.

197. Defendants are guilty of oppression, fraud, and/or malice, express or implied, because Defendants knowingly and intentionally caused harmful and offensive contract to the person of SCHOENWALD with the intention of, or reckless disregard for, the damages that it was causing to SCHOENWALD.

198. Therefore, SCHOENWALD is entitled to collect punitive damages from WEBB in an amount to be determined by a Jury.

## NINTH CAUSE OF ACTION

### Violation of NRS 613.075

### (SCHOENWALD Against UNUM and COLONIAL LIFE)

199. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

200. NRS 613.075 allows an employee to request a copy of her employee file within sixty (60) days of termination.

201. SCHOENWALD was terminated on June 28, 2019. She requested a complete copy of her personnel file on July 9, 2019.

202. SCHOENWALD'S request was within the timeframe required by NRS 613.075.

203. Defendants did not comply with SCHOENWALD'S valid request and still have not provided a copy of her personnel file.

204. The Nevada Supreme Court has determined that there is a private right of action under NRS 613.075.

205.    SCHOENWALD has been forced to seek legal counsel to pursue her valid legal claims against Defendants and she is therefore entitled to reasonable attorney's fees.

### TENTH CAUSE OF ACTION

**Negligent Hiring, Training and Supervision**

**(SCHOENWALD Against UNUM and COLONIAL LIFE)**

206.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

207.    Defendants had a duty to take reasonable action in the hiring, training and supervision of their employees.

208.    Defendants had a duty to train their employees on applicable policies and procedures that must be followed when investigating a complaint such as that made by Plaintiffs in this matter.

209.    Defendants had a duty to supervise their employees in a reasonable manner so as to assure that their employees were following all applicable policies and procedures.

210.    Defendants had a duty to supervise all employees to assure that no employee was taking discriminatory, harassing, or other improper actions against another employee.

211.    Ms. Harley did not follow UNUM'S and COLONIAL LIFE'S policies and procedures when she interrogated SCHOENWALD and retaliated against her.

212.    WEBB did not follow UNUM'S and COLONIAL LIFE'S policies and procedures when he physically and verbally assaulted, harassed, and battered SCHOENWALD.

213.    Defendants breached this duty by failing to properly train employees, including Ms. Harley, in the proper procedures and policies that must be followed when investigating a complaint like that made by Plaintiffs in this matter.

214.    WEBB and Ms. Harley were joint employees of UNUM and COLONIAL LIFE when they breached policies and procedures and were further working within the course and scope of their employment.

215.    UNUM and COLONIAL LIFE'S failure to adequately hire, train, and supervise Ms. Harley and WEBB was the direct and proximate cause of injury to SCHOENWALD.

. . .

216.    SCHOENWALD has been forced to seek legal counsel to pursue her valid legal claims against Defendants and she is therefore entitled to reasonable attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment for Plaintiffs as follows:

1.    Awarding judgment as appropriate and requiring Defendants to pay Plaintiffs' compensatory damages, consequential damages, special damages, and any other damages described herein and to be proven at trial, including back pay, and front pay, in an amount in excess of $15,000.00;

2.    Awarding prejudgment interest;

3.    Awarding punitive damages;

4.    Awarding Plaintiffs fees and costs associated with bringing this action, in addition to reasonable attorney's fees as provided by the United States and or the Nevada statutes; and

5.    Granting such other and further relief as this Court deems necessary and proper.

### JURY DEMAND

Plaintiffs HEATHER SCHOENWALD and TOM KOCH, by and through their respective attorneys, hereby demands trial of this mattery by jury.

DATED this 21st day of October, 2020.

DATED this 21st day of October, 2020.

**CLAGGETT & SYKES LAW FIRM**

  /s/ Joseph N. Mott
SEAN K. CLAGGETT, ESQ. (#8407)
JOSEPH N. MOTT, ESQ. (#12455)
4101 Meadows Lane, Suite 100
Las Vegas, Nevada 89107
Tel: (702) 655-2346
Fax: (702) 655-3763
sclaggett@claggettlaw.com
joey@claggettlaw.com
*Attorneys for Plaintiff Heather Schoenwald*

**LAGOMARSINO LAW**

  /s/ Andre M. Lagomarsino
ANDRE M. LAGOMARSINO, ESQ. (#6711)
DAVEN P. CAMERON, ESQ. (#14179)
3005 W. Horizon Ridge Pkwy., Suite 241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
aml@lagomarsinolaw.com
daven@lagomarsinolaw.com
*Attorneys for Plaintiff Tom Koch*